# SEATTLE TIMES CO., DBA THE SEATTLE TIMES, ET AL. *v.* RHINEHART ET AL.

No. 82–1721.  Argued February 21, 1984—Decided May 21, 1984

*Evan L. Schwab* argued the cause for petitioners. With him on the briefs were *P. Cameron DeVore* and *Bruce E. H. Johnson.*

*Malcolm L. Edwards* argued the cause for respondents. With him on the brief was *Charles K. Wiggins*.*

JUSTICE POWELL delivered the opinion of the Court.

This case presents the issue whether parties to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process.

## I

Respondent Rhinehart is the spiritual leader of a religious group, the Aquarian Foundation. The Foundation has fewer than 1,000 members, most of whom live in the State of Washington. Aquarian beliefs include life after death and the ability to communicate with the dead through a medium. Rhinehart is the primary Aquarian medium.

In recent years, the Seattle Times and the Walla Walla Union-Bulletin have published stories about Rhinehart and the Foundation. Altogether 11 articles appeared in the newspapers during the years 1973, 1978, and 1979. The five articles that appeared in 1973 focused on Rhinehart and the manner in which he operated the Foundation. They described seances conducted by Rhinehart in which people paid him to put them in touch with deceased relatives and friends. The articles also stated that Rhinehart had sold magical "stones" that had been "expelled" from his body. One article referred to Rhinehart's conviction, later vacated, for sodomy. The four articles that appeared in 1978 concentrated on an "extravaganza" sponsored by Rhinehart at the Walla Walla State Penitentiary. The articles stated that he had treated 1,100 inmates to a 6-hour-long show, during which he gave away between $35,000 and $50,000 in cash and prizes. One article described a "chorus line of girls [who] shed their

---

*James C. Goodale, John G. Koeltl, Burt Neuborne, Charles S. Sims, W. Terry Maguire, Anthony Epstein, Erwin G. Krasnow, Bruce W. Sanford, J. Laurent Scharff, Richard M. Schmidt, Jr.,* and *Donald F. Luke* filed a brief for the American Civil Liberties Union et al. as *amici curiae*.

gowns and bikinis and sang . . . ." App. 25a. The two articles that appeared in 1979 referred to a purported connection between Rhinehart and Lou Ferrigno, star of the popular television program, "The Incredible Hulk."

## II

Rhinehart brought this action in the Washington Superior Court on behalf of himself and the Foundation against the Seattle Times, the Walla Walla Union-Bulletin, the authors of the articles, and the spouses of the authors. Five female members of the Foundation who had participated in the presentation at the penitentiary joined the suit as plaintiffs.[1] The complaint alleges that the articles contained statements that were "fictional and untrue," and that the defendants—petitioners here—knew, or should have known, they were false. According to the complaint, the articles "did and were calculated to hold [Rhinehart] up to public scorn, hatred and ridicule, and to impeach his honesty, integrity, virtue, religious philosophy, reputation as a person and in his profession as a spiritual leader." *Id.*, at 8a. With respect to the Foundation, the complaint also states: "[T]he articles have, or may have had, the effect of discouraging contributions by the membership and public and thereby diminished the financial ability of the Foundation to pursue its corporate purposes." *Id.*, at 9a. The complaint alleges that the articles misrepresented the role of the Foundation's "choir" and falsely implied that female members of the Foundation had "stripped off all their clothes and wantonly danced naked . . . ." *Id.*, at 6a. The complaint requests $14,100,000 in damages for the alleged defamation and invasions of privacy.[2]

---

[1] The record is unclear as to whether all five of the female plaintiffs participated in the "chorus line" described in the 1978 articles. The record also does not disclose whether any of the female plaintiffs were mentioned by name in the articles.

[2] Although the complaint does not allege specifically that the articles caused a decline in membership of the Foundation, respondents' answers to petitioners' interrogatories raised this issue. In response to petitioners'

Petitioners filed an answer, denying many of the allegations of the complaint and asserting affirmative defenses.[3] Petitioners promptly initiated extensive discovery. They deposed Rhinehart, requested production of documents pertaining to the financial affairs of Rhinehart and the Foundation, and served extensive interrogatories on Rhinehart and the other respondents. Respondents turned over a number of financial documents, including several of Rhinehart's income tax returns. Respondents refused, however, to disclose certain financial information,[4] the identity of the Foundation's donors during the preceding 10 years, and a list of its members during that period.

Petitioners filed a motion under the State's Civil Rule 37 requesting an order compelling discovery.[5] In their supporting memorandum, petitioners recognized that the principal issue as to discovery was respondents' "refusa[l] to permit any effective inquiry into their financial affairs, such as the source of their donations, their financial transactions, uses of

---

request that respondents explain the damages they are seeking, respondents claimed that the Foundation had experienced a drop in membership in Hawaii and Washington "from about 300 people to about 150 people, and [a] concurrent drop in contributions." Record 503.

[3] Affirmative defenses included contentions that the articles were substantially true and accurate, that they were privileged under the First and Fourteenth Amendments, that the statute of limitations had run as to the 1973 articles, that the individual respondents had consented to any invasions of privacy, and that respondents had no reasonable expectation of privacy when performing before 1,100 prisoners.

[4] Rhinehart also refused to reveal the current address of his residence. He submitted an affidavit stating that he had relocated out of fear for his safety and that disclosure of his current address would subject him to risks of bodily harm. Petitioners promptly moved for an order compelling Rhinehart to give his address and the trial court granted the motion.

[5] Washington Superior Court Civil Rule 37 provides in relevant part: "A party, upon reasonable notice to other parties and all persons affected thereby, may apply to the court in the county where the deposition was taken, or in the county where the action is pending, for an order compelling discovery . . . ."

their wealth and assets, and their financial condition in general." Record 350. Respondents opposed the motion, arguing in particular that compelled production of the identities of the Foundation's donors and members would violate the First Amendment rights of members and donors to privacy, freedom of religion, and freedom of association. Respondents also moved for a protective order preventing petitioners from disseminating any information gained through discovery. Respondents noted that petitioners had stated their intention to continue publishing articles about respondents and this litigation, and their intent to use information gained through discovery in future articles.

In a lengthy ruling, the trial court initially granted the motion to compel and ordered respondents to identify all donors who made contributions during the five years preceding the date of the complaint, along with the amounts donated. The court also required respondents to divulge enough membership information to substantiate any claims of diminished membership. Relying on *In re Halkin,* 194 U. S. App. D. C. 257, 598 F. 2d 176 (1979),[6] the court refused to issue a protective order. It stated that the facts alleged by respondents in support of their motion for such an order were too conclusory to warrant a finding of "good cause" as re-

---

[6] The *Halkin* decision was debated by the courts below. Prior to *Halkin,* the only Federal Court of Appeals to consider the question directly had understood that the First Amendment did not affect a trial court's authority to restrict dissemination of information produced during pretrial discovery. See *International Products Corp.* v. *Koons,* 325 F. 2d 403, 407–408 (CA2 1963). *Halkin* considered the issue at length. Characterizing a protective order as a "paradigmatic prior restraint," *Halkin* held that such orders require close scrutiny. The court also held that before a court should issue a protective order that restricts expression, it must be satisfied that "the harm posed by dissemination must be substantial and serious; the restraining order must be narrowly drawn and precise; and there must be no alternative means of protecting the public interest which intrudes less directly on expression." 194 U. S. App. D. C., at 272, 598 F. 2d, at 191 (footnotes omitted).

quired by Washington Superior Court Civil Rule 26(c).[7] The court stated, however, that the denial of respondents' motion was "without prejudice to [respondents'] right to move for a protective order in respect to specifically described discovery materials and a factual showing of good cause for restraining defendants in their use of those materials." Record 16.

Respondents filed a motion for reconsideration in which they renewed their motion for a protective order. They submitted affidavits of several Foundation members to support their request. The affidavits detailed a series of letters and telephone calls defaming the Foundation, its members, and Rhinehart—including several that threatened physical harm to those associated with the Foundation. The affiants also described incidents at the Foundation's headquarters involving attacks, threats, and assaults directed at Foundation members by anonymous individuals and groups. In general, the affidavits averred that public release of the donor lists would adversely affect Foundation membership and income

---

[7] Rule 26(c) provides:

"Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court. . . ."

Rule 26(c) is typical of the provisions adopted in many States.

and would subject its members to additional harassment and reprisals.

Persuaded by these affidavits, the trial court issued a protective order covering all information obtained through the discovery process that pertained to "the financial affairs of the various plaintiffs, the names and addresses of Aquarian Foundation members, contributors, or clients, and the names and addresses of those who have been contributors, clients, or donors to any of the various plaintiffs." App. 65a. The order prohibited petitioners from publishing, disseminating, or using the information in any way except where necessary to prepare for and try the case. By its terms, the order did not apply to information gained by means other than the discovery process.[8] In an accompanying opinion, the trial court recognized that the protective order would restrict petitioners' right to publish information obtained by discovery, but the court reasoned that the restriction was necessary to avoid the "chilling effect" that dissemination would have on "a party's willingness to bring his case to court." Record 63.

Respondents appealed from the trial court's production order, and petitioners appealed from the protective order.

---

[8] The relevant portions of the protective order state:

"2. Plaintiffs' motion for a protective order is granted with respect to information gained by the defendants through the use of all of the discovery processes regarding the financial affairs of the various plaintiffs, the names and addresses of Aquarian Foundation members, contributors, or clients, and the names and addresses of those who have been contributors, clients, or donors to any of the various plaintiffs.

"3. The defendants and each of them shall make no use of and shall not disseminate the information defined in paragraph 2 which is gained through discovery, other than such use as is necessary in order for the discovering party to prepare and try the case. As a result, information gained by a defendant through the discovery process may not be published by any of the defendants or made available to any news media for publication or dissemination. This protective order has no application except to information gained by the defendants through the use of the discovery processes." App. 65a.

The Supreme Court of Washington affirmed both. 98 Wash. 2d 226, 654 P. 2d 673 (1982). With respect to the protective order, the court reasoned:

"Assuming then that a protective order may fall, ostensibly, at least, within the definition of a 'prior restraint of free expression', we are convinced that the interest of the judiciary in the integrity of its discovery processes is sufficient to meet the 'heavy burden' of justification. The need to preserve that integrity is adequate to sustain a rule like CR 26(c) which authorizes a trial court to protect the confidentiality of information given for purposes of litigation." *Id.*, at 256, 654 P. 2d, at 690.[9]

The court noted that "[t]he information to be discovered concerned the financial affairs of the plaintiff Rhinehart and his organization, in which he and his associates had a recognizable privacy interest; and the giving of publicity to these matters would allegedly and understandably result in annoyance, embarrassment and even oppression." *Id.*, at 256–257, 654 P. 2d, at 690. Therefore, the court concluded, the trial court had not abused its discretion in issuing the protective order.[10]

The Supreme Court of Washington recognized that its holding conflicts with the holdings of the United States Court

---

[9] Although the Washington Supreme Court assumed, *arguendo*, that a protective order could be viewed as an infringement on First Amendment rights, the court also stated:

"A persuasive argument can be made that when persons are required to give information which they would otherwise be entitled to keep to themselves, in order to secure a government benefit or perform an obligation to that government, those receiving that information waive the right to use it for any purpose except those which are authorized by the agency of government which exacted the information." 98 Wash. 2d, at 239, 654 P. 2d, at 681.

[10] The Washington Supreme Court also held that, because the protective order shields respondents from "abuse of the discovery privilege," respondents could not object to the order compelling production. We do not consider here that aspect of the Washington Supreme Court's decision.

of Appeals for the District of Columbia Circuit in *In re Halkin*, 194 U. S. App. D. C. 257, 598 F. 2d 176 (1979),[11] and applies a different standard from that of the Court of Appeals for the First Circuit in *In re San Juan Star Co.*, 662 F. 2d 108 (1981).[12] We granted certiorari to resolve the conflict.[13] 464 U. S. 812 (1983). We affirm.

## III

Most States, including Washington, have adopted discovery provisions modeled on Rules 26 through 37 of the Federal Rules of Civil Procedure. F. James & G. Hazard, Civil Procedure 179 (1977).[14] Rule 26(b)(1) provides that a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." It further provides that discovery is not limited to matters that will be admissible at trial so long as the information sought "appears reasonably calculated to lead to the dis-

---

[11] See n. 6, *supra*.

[12] In *San Juan Star*, the Court of Appeals for the First Circuit considered and rejected *Halkin*'s approach to the constitutionality of protective orders. Although the *San Juan* court held that protective orders may implicate First Amendment interests, the court reasoned that such interests are somewhat lessened in the civil discovery context. The court stated: "In general, then, we find the appropriate measure of such limitations in a standard of 'good cause' that incorporates a 'heightened sensitivity' to the First Amendment concerns at stake . . . ." 662 F. 2d, at 116.

[13] The holding of the Supreme Court of Washington is consistent with the decision of the Court of Appeals for the Second Circuit in *International Products Corp.* v. *Koons*, 325 F. 2d, at 407–408.

[14] See *Bushman* v. *New Holland Division*, 83 Wash. 2d 429, 433, 518 P. 2d 1078, 1080 (1974). The Washington Supreme Court has stated that when the language of a Washington Rule and its federal counterpart are the same, courts should look to decisions interpreting the Federal Rule for guidance. *American Discount Corp.* v. *Saratoga West, Inc.*, 81 Wash. 2d 34, 37–38, 499 P. 2d 869, 871 (1972). The Washington Rule that provides for the scope of civil discovery and the issuance of protective orders is virtually identical to its counterpart in the Federal Rules of Civil Procedure. Compare Wash. Super. Ct. Civ. Rules 26(b) and (c) with Fed. Rules Civ. Proc. 26(b) and (c).

covery of admissible evidence." Wash. Super. Ct. Civ. Rule 26(b)(1); *Trust Fund Services* v. *Aro Glass Co.*, 89 Wash. 2d 758, 763, 575 P. 2d 716, 719 (1978); cf. 8 C. Wright & A. Miller, Federal Practice and Procedure § 2008 (1970).[15]

The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach. Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action. Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties.[16] If a litigant fails to comply with a request for discovery, the court may issue an order directing compliance that is enforceable by the court's contempt powers. Wash. Super. Ct. Civ. Rule 37(b).[17]

Petitioners argue that the First Amendment imposes strict limits on the availability of any judicial order that has the

---

[15] Washington Superior Court Civil Rule 26(b)(1), identical to Federal Rule of Civil Procedure 26(b)(1) in effect at the time, provides in full:

*"In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

[16] Under Rules 30 and 31, a litigant may depose a third party by oral or written examination. The litigant can compel the third party to be deposed and to produce tangible evidence at the deposition by serving the third party with a subpoena pursuant to Rule 45. Rule 45(b)(1) authorizes a trial court to quash or modify a subpoena of tangible evidence "if it is unreasonable and oppressive." Rule 45(f) provides: "Failure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court from which the subpoena issued."

[17] In addition to its contempt power, Rule 37(b)(2) authorizes a trial court to enforce an order compelling discovery by other means including, for example, regarding designated facts as established for purposes of the action. Cf. Fed. Rule Civ. Proc. 37(b)(2)(A).

effect of restricting expression. They contend that civil discovery is not different from other sources of information, and that therefore the information is "protected speech" for First Amendment purposes. Petitioners assert the right in this case to disseminate any information gained through discovery. They do recognize that in limited circumstances, not thought to be present here, some information may be restrained. They submit, however:

> "When a protective order seeks to limit expression, it may do so only if the proponent shows a compelling governmental interest. Mere speculation and conjecture are insufficient. Any restraining order, moreover, must be narrowly drawn and precise. Finally, before issuing such an order a court must determine that there are no alternatives which intrude less directly on expression." Brief for Petitioners 10.

We think the rule urged by petitioners would impose an unwarranted restriction on the duty and discretion of a trial court to oversee the discovery process.

### IV

It is, of course, clear that information obtained through civil discovery authorized by modern rules of civil procedure would rarely, if ever, fall within the classes of unprotected speech identified by decisions of this Court. In this case, as petitioners argue, there certainly is a public interest in knowing more about respondents. This interest may well include most—and possibly all—of what has been discovered as a result of the court's order under Rule 26(b)(1). It does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery. For even though the broad sweep of the First Amendment seems to prohibit all restraints on free expression, this Court has observed that "[f]reedom of speech . . . does not comprehend the right to speak on any subject at any time." *American Communications Assn.* v. *Douds,* 339 U. S. 382, 394–395 (1950).

The critical question that this case presents is whether a litigant's freedom comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in which the information might be used. In addressing that question it is necessary to consider whether the "practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression" and whether "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier* v. *Martinez*, 416 U. S. 396, 413 (1974); see *Brown* v. *Glines*, 444 U. S. 348, 354–355 (1980); *Buckley* v. *Valeo*, 424 U. S. 1, 25 (1976).

## A

At the outset, it is important to recognize the extent of the impairment of First Amendment rights that a protective order, such as the one at issue here, may cause. As in all civil litigation, petitioners gained the information they wish to disseminate only by virtue of the trial court's discovery processes. As the Rules authorizing discovery were adopted by the state legislature, the processes thereunder are a matter of legislative grace. A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. *Zemel* v. *Rusk*, 381 U. S. 1, 16–17 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information"). Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations. See *In re Halkin*, 194 U. S. App. D. C., at 287, 598 F. 2d, at 206–207 (Wilkey, J., dissenting).[18]

---

[18] Although litigants do not "surrender their First Amendment rights at the courthouse door," *In re Halkin*, 194 U. S. App. D. C., at 268, 598 F. 2d, at 186, those rights may be subordinated to other interests that arise in

Moreover, pretrial depositions and interrogatories are not public components of a civil trial.[19]   Such proceedings were not open to the public at common law, *Gannett Co.* v. *DePasquale*, 443 U. S. 368, 389 (1979), and, in general, they are conducted in private as a matter of modern practice. See *id.*, at 396 (BURGER, C. J., concurring); Marcus, Myth and Reality in Protective Order Litigation, 69 Cornell L. Rev. 1 (1983).   Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action.   Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.

Finally, it is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny.   See *Gannett Co.* v. *DePasquale*,

---

this setting.   For instance, on several occasions this Court has approved restriction on the communications of trial participants where necessary to ensure a fair trial for a criminal defendant.   See *Nebraska Press Assn.* v. *Stuart*, 427 U. S. 539, 563 (1976); *id.*, at 601, and n. 27 (BRENNAN, J., concurring in judgment); *Oklahoma Publishing Co.* v. *District Court*, 430 U. S. 308, 310–311 (1977); *Sheppard* v. *Maxwell*, 384 U. S. 333, 361 (1966). "In the conduct of a case, a court often finds it necessary to restrict the free expression of participants, including counsel, witnesses, and jurors." *Gulf Oil Co.* v. *Bernard*, 452 U. S. 89, 104, n. 21 (1981).

[19] Discovery rarely takes place in public.   Depositions are scheduled at times and places most convenient to those involved.   Interrogatories are answered in private.   Rules of Civil Procedure may require parties to file with the clerk of the court interrogatory answers, responses to requests for admissions, and deposition transcripts.   See Fed. Rule Civ. Proc. 5(d). Jurisdictions that require filing of discovery materials customarily provide that trial courts may order that the materials not be filed or that they be filed under seal.   See *ibid.*; Wash. Super. Ct. Civ. Rule 26(c).   Federal district courts may adopt local rules providing that the fruits of discovery are not to be filed except on order of the court.   See, *e. g.*, C. D. Cal. Rule 8.3; S. D. N. Y. Civ. Rule 19.   Thus, to the extent that courthouse records could serve as a source of public information, access to that source customarily is subject to the control of the trial court.

*supra,* at 399 (POWELL, J., concurring). As in this case, such a protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes. In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context. Therefore, our consideration of the provision for protective orders contained in the Washington Civil Rules takes into account the unique position that such orders occupy in relation to the First Amendment.

## B

Rule 26(c) furthers a substantial governmental interest unrelated to the suppression of expression. *Procunier, supra,* at 413. The Washington Civil Rules enable parties to litigation to obtain information "relevant to the subject matter involved" that they believe will be helpful in the preparation and trial of the case. Rule 26, however, must be viewed in its entirety. Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.[20] This abuse is not limited to

---

[20] See Comments of the Advisory Committee on the 1983 Amendments to Fed. Rule Civ. Proc. 26, 28 U. S. C. App., pp. 729–730 (1982 ed., Supp. I). In *Herbert* v. *Lando,* 441 U. S. 153 (1979), the Court observed: "There have been repeated expressions of concern about undue and uncontrolled discovery, and voices from this Court have joined the chorus. But until and

matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.[21] The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.

There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes. Cf. *Herbert* v. *Lando*, 441 U. S. 153, 176–177 (1979); *Gumbel* v. *Pitkin*, 124 U. S. 131, 145–146 (1888). As stated by Judge Friendly in *International Products Corp.* v. *Koons*, 325 F. 2d 403, 407–408 (CA2 1963), "[w]hether or not the Rule itself authorizes [a particular protective order] . . . we have no question as to the court's jurisdiction to do this under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices'" (citing *Gumbel* v. *Pitkin, supra*). The prevention of the abuse that can attend the coerced production of information under

unless there are major changes in the present Rules of Civil Procedure, reliance must be had on what in fact and in law are ample powers of the district judge to prevent abuse." *Id.*, at 176–177 (footnote omitted); see also *id.*, at 179 (POWELL, J., concurring). But abuses of the Rules by litigants, and sometimes the inadequate oversight of discovery by trial courts, do not in any respect lessen the importance of discovery in civil litigation and the government's substantial interest in protecting the integrity of the discovery process.

[21] Cf. *Whalen* v. *Roe*, 429 U. S. 589, 599 (1977); *Cox Broadcasting Corp.* v. *Cohn*, 420 U. S. 469, 488–491 (1975). Rule 26(c) includes among its express purposes the protection of a "party or person from annoyance, embarrassment, oppression or undue burden or expense." Although the Rule contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule.

a State's discovery rule is sufficient justification for the authorization of protective orders.[22]

## C

We also find that the provision for protective orders in the Washington Rules requires, in itself, no heightened First Amendment scrutiny. To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. The Legislature of the State of Washington, following the example of the Congress in its approval of the Federal Rules of Civil Procedure, has determined that such discretion is necessary, and we find no reason to disagree. The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery.[23] The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.

## V

The facts in this case illustrate the concerns that justifiably may prompt a court to issue a protective order. As we have noted, the trial court's order allowing discovery was extremely broad. It compelled respondents—among other

---

[22] The Supreme Court of Washington properly emphasized the importance of ensuring that potential litigants have unimpeded access to the courts: "[A]s the trial court rightly observed, rather than expose themselves to unwanted publicity, individuals may well forgo the pursuit of their just claims. The judicial system will thus have made the utilization of its remedies so onerous that the people will be reluctant or unwilling to use it, resulting in frustration of a right as valuable as that of speech itself." 98 Wash. 2d 226, 254, 654 P. 2d 673, 689 (1982). Cf. *California Motor Transport Co.* v. *Trucking Unlimited*, 404 U. S. 508, 510 (1972); *NAACP* v. *Button*, 371 U. S. 415, 429–431 (1963).

[23] In addition, heightened First Amendment scrutiny of each request for a protective order would necessitate burdensome evidentiary findings and could lead to time-consuming interlocutory appeals, as this case illustrates. See, *e. g., Zenith Radio Corp.* v. *Matsushita Electric Industrial Co.*, 529 F. Supp. 866 (ED Pa. 1981).

things—to identify all persons who had made donations over a 5-year period to Rhinehart and the Aquarian Foundation, together with the amounts donated. In effect the order would compel disclosure of membership as well as sources of financial support. The Supreme Court of Washington found that dissemination of this information would "result in annoyance, embarrassment and even oppression." 98 Wash. 2d, at 257, 654 P. 2d, at 690. It is sufficient for purposes of our decision that the highest court in the State found no abuse of discretion in the trial court's decision to issue a protective order pursuant to a constitutional state law. We therefore hold that where, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment.[24]

The judgment accordingly is

*Affirmed.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, concurring.

The Court today recognizes that pretrial protective orders, designed to limit the dissemination of information gained through the civil discovery process, are subject to scrutiny under the First Amendment. As the Court acknowledges, before approving such protective orders, "it is necessary to consider whether the 'practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression' and whether 'the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental

---

[24] It is apparent that substantial government interests were implicated. Respondents, in requesting the protective order, relied upon the rights of privacy and religious association. Both the trial court and the Supreme Court of Washington also emphasized that the right of persons to resort to the courts for redress of grievances would have been "chilled." See n. 22, *supra.*

38

interest involved.'" *Ante*, at 32 (quoting *Procunier* v. *Martinez*, 416 U. S. 396, 413 (1974)).

In this case, the respondents opposed discovery, and in the alternative sought a protective order for discovered materials, because the "compelled production of the identities of the Foundation's donors and members would violate the First Amendment rights of members and donors to privacy, freedom of religion, and freedom of association." *Ante*, at 25. The Supreme Court of Washington found that these interests constituted the requisite "good cause" under the State's Rule 26(c) (upon "good cause shown," the court may make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). 98 Wash. 2d 226, 256, 654 P. 2d 673, 690 (1982). Given this finding, the court approved a protective order limited to "information . . . regarding the financial affairs of the various [respondents], the names and addresses of Aquarian Foundation members, contributors, or clients, and the names and addresses of those who have been contributors, clients, or donors to any of the various [respondents]." *Ante*, at 27, n. 8. I agree that the respondents' interests in privacy and religious freedom are sufficient to justify this protective order and to overcome the protections afforded free expression by the First Amendment. I therefore join the Court's opinion.