CLARK, Circuit Judge,
dissenting:
In this prior restraint upon access to public information case, the majority opinion fails to recognize the distinction between the issue in this case and that in Seattle Times, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), upon which it relies. Seattle Times was a private law suit by plaintiffs seeking damages from the newspaper for defamation. The newspaper wished to publicize information obtained by discovery in the law suit. The plaintiffs sought protection from publication of the names of the plaintiff religious organization, members of which had received threatening letters. In affirming that there was no abuse of discretion in the entry of the protective order by the Washington state trial court and the affirmance of the order by the Washington Supreme Court, the Supreme Court of the United States stated the following in its note 24:
It is apparent that substantial government interests were implicated. Respondents, in requesting the protective order, relied upon the rights of privacy and religious association. Both the trial court and the Supreme Court of Washington also emphasized that the right of persons to resort to the courts for redress of grievances would have been “chilled.” See n. 22, supra.
In the Seattle Times case, there was no governmental entity or public official who was a party to the litigation. The law suit involved no issue of scrutinizing the actions of public officials in investing public funds. By contrast, the present case had amongst the plaintiffs ten local governing bodies from Pompano Beach, Florida to Clallam County, Washington, who along with others sought to recover damages resulting from the collapse of E.S.M. Government Securities, Inc. in which investors, including the municipal and local governments, lost millions of dollars. It is obvious that this law suit is not merely private litigation. The public has an interest in the facts of this case. This does not mean that the public or the press should have carte blanche access to discovery information obtained in the pretrial proceedings of this case. However, it does mean that the public interest and right of access to information should be considered in the balancing process of determining whether the pretrial information should be limited to the parties only. Here there was not even any inquiry as to whether there should be a balancing process.
While the right of access of the public and the. press to public information had been considered by many as a component of the First Amendment, it was first announced by the Supreme Court in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Justice Stevens in his concurring opinion stated:
This is a watershed case. Until today, the court has accorded virtually absolute protection to the dissemination of information or ideas, but never before has it squarely held that the acquisition of *358 newsworthy matter is entitled to any constitutional protection whatsoever.
Id. at 582, 100 S.Ct. at 2830.
Prior to Richmond Newspapers, Inc., its author, Chief Justice Burger, had written the following as part of the plurality opinion in Houckins v. KQED, Inc., 438 U.S. 1, 15, 98 S.Ct. 2588, 2597, 57 L.Ed.2d 553 (1978): “Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government’s control.” Two justices took no part in the consideration or decision of the case. Justice Stewart concurring in the judgment wrote the following:
The First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government, nor do they guarantee the press any basic right of access superior to that of the public generally. The Constitution does no more than assure the public and the press equal access once government has opened its doors. Accordingly, I agree substantially with what the opinion of The Chief Justice has to say on that score.
We part company, however, in applying these abstractions to the facts of this case. Whereas he appears to view “equal access” as meaning access that is identical in all respects, I believe that the concept of equal access must be accorded more flexibility in order to accommodate the practical distinctions between the press and the general public.
When on assignment, a journalist does not tour a jail simply for his own edification. He is there to gather information to be passed on to others, and his mission is protected by the Constitution for very specific reasons. “Enlightened choice by an informed citizenry is the basic ideal upon which an open society is premised ...” Branzburg v. Hayes, 408 U.S. 665, 726, 92 S.Ct. 2646, 2672, 33 L.Ed.2d 626 (dissenting opinion). Our society depends heavily on the press for that enlightenment. Though not without its lapses, the press “has been a mighty catalyst in awakening public interest in governmental affairs, exposing corruption among public officers and employees and generally informing the citizenry of public events and occurrences....”
Id., 438 U.S. at 16-17, 98 S.Ct. at 2597-98 (footnote omitted) (citations omitted).
For a district court to enter a protective order making information inaccessible pursuant to Fed.R.Civ.P. 26(c), the party must show good cause and the court must evaluate and balance “the competing public and private interests.” Majority op. at 355. The majority is absolutely correct in making this legal statement and I concur without any hesitancy. The majority then approves the following finding of probable cause by the district court: “ ‘the fear of adverse publicity, intimidation or other outside forces that could interfere with the free flow of information, most of which would not be admissible during the actual litigation stage of [the] cases.’ ” Id. at 355-56. However, there are no facts in the record in this case that form the basis of a finding of any fear of adverse publicity or intimidation nor was there any consideration by the district court of the public right of access. To the contrary, in this case, the parties, including the public entities, stipulated to the consent order.[1]
*359 In Seattle Times, the plaintiffs presented evidence establishing threats of harm to themselves and an abuse of their First Amendment right of religious association if the discovery sought were revealed to the public. Here the parties offered no facts in support of a probable cause finding. The majority approves a consent order denying the public access to information[2] without the evaluation and balancing of public and private interest which the opinion says is required. Thus, I cannot join it.

. The protective order in question was issued with the consent and upon the request of the parties. The order was intended to expedite the flow of discovery material, promote the prompt resolution of disputes over confidentiality, and facilitate the preservation of material deemed worthy of protection....
After considering the factors previously mentioned for ascertaining good cause and balancing the interests of the parties and the non-parties concerning the dissemination of discovery materials, we affirm the protective order in this case.... We conclude that in complex litigation where document-by-document review of discovery materials would be unpracticable, and when the parties consent to an umbrella order restricting access to sensitive information in order to encourage maximum participation in the discovery process, conserve judicial resources and prevent the abuses of annoyance, oppression and embarrassment, a district court may find good cause and issue a protective order pursuant to Rule 26(c).
Majority op. at 356-57.

. I do not suggest that the public hqs an automatic right to the pretrial discovery in this case. It does have a right to know why it should not have access when the conduct of public officials may be under scrutiny. Similarly, I do not suggest wrongdoing on the part of any public officials. The record is a blank. See Van Al-styne, Interpretations of the First Amendment, 50-67, (Duke Press Policy Studies, 1984), for an excellent discussion of the competing considerations in granting or denying access,