[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION TO CONTINUE ORDER SEALING FILE AND MOTION FOR PROTECTIVE ORDER
The defendants, Hartford Roman Catholic Diocesan Corporation CT Page 9797 ("Diocese"), and Church of the Holy Spirit ("Church") have filed a Motion to Continue Order Sealing File and a Motion for Protective Order in this action in which the plaintiffs seek damages from them and the defendant, Peter Zizka, in connection with sexual abuse by Zizka which allegedly occurred in the time period from 1975 to 1983.
Factual and Procedural Background
On November 21, 1995 several months after the plaintiffs commenced these actions, the parties stipulated that "the court file in the above-captioned matter be sealed from the public for a period of six weeks from the date hereof. This stipulation is entered into to facilitate settlement of the lawsuit. The file will be unsealed by stipulation after the passage of six weeks unless the parties agree to an extension, whereupon a new extension stipulation must be filed." The court ordered the temporary sealing of the files pursuant to the foregoing stipulation on November 22, 1995.
After the passage of six weeks and no settlement of the lawsuit, the parties neither stipulated to the unsealing of the file, nor to an extension of the order sealing the file. On March 5, 1998 the undersigned filed Memoranda of Decision on the Defendants' Motions to Strike. Those Memoranda of Decision were not filed under seal, and portions thereof were quoted in an article in the April 4, 1998 edition of the Manchester JournalInquirer. That article also included information that Peter Zizka had been a priest at a local church for five years, and quoted from a letter written by 19 lay leaders of the church shortly after the lawsuits were filed: "During his five-year tenure with us, his personal zeal, direction, and pastoral skills have enormously revitalized our parish family. . . . Since [1993] his priestly leadership and performance has been so outstanding that we would like to think that what we see today is more truly indicative of his personal character than whatever transgressions may have occurred in his more youthful years."
After the publication of the Journal Inquirer article, the defendants filed the Motion to Continue Order Sealing File and the Motion for Protective Order.
Discussion of Law and RulingMotion to Seal File
CT Page 9798
Practice Book § 11-20, formerly § 211B, provides:
 (a) Except as provided in this section and except as otherwise provided by law, . . ., the judicial authority shall not order that the public, which may include the news media, be excluded from any portion of a proceeding and shall not order that any files, affidavits, documents, or other materials on file with the court or filed in connection with a court proceeding be sealed or their disclosure limited.
 (b) Upon motion of any party, or upon its own motion, the judicial authority may order that the public be excluded from any portion of a proceeding and may order that files, affidavits, documents or other materials on file with the court or filed in connection with a court proceeding be sealed or their disclosure limited if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in attending such proceeding or in viewing such materials. Any such order shall be no broader than necessary to protect such overriding interest.
 (c) In connection with any order issued pursuant to subsection (b) of this section, the judicial authority shall, on the record in open court, articulate the overriding interest being protected and shall specify its findings underlying such order. . . .
The defendants have presented no evidence to establish their contention of an "overriding interest" other than a copy of the aforementioned newspaper article. They argue, presumably based on information contained in that article, that Zizka has been a particularly effective priest who is serving his faith community with distinction. Pretrial disclosure of the contents of the court file would disrupt, diminish or destroy Zizka's ability to serve his community. They further claim that there is no need for the public to read all of the salacious details during the pretrial phase of the case.
As a general proposition, a priest's right to maintain a good reputation certainly overrides the public's right to pretrial titillation. However, public titillation is merely one, albeit unfortunate, aspect of the public's First Amendment right of access to court proceedings. The defendants have presented no CT Page 9799 case in which the possibility of damage to reputation overrides the public's access to court proceedings.
The plaintiffs have cited Rosado v. Bridgeport Rom. Cath.Diocesan, No. CV 93 0300272S, 1994 Ct. Sup. 12422 (Levin, J., Dec. 8, 1994) in which the Superior Court considered potential damage to the reputation of a priest an insufficient basis for a protective order for discovery materials. The defendants argue that unlike Zizka, the perpetrator in Rosado was no longer in the active service of the church and his reputation had less need for protection than that of Zizka. But if harm to reputation warranted curtailing public access to court proceedings, then public access to pretrial proceedings would be restricted routinely to protect the reputation of anyone accused of a serious crime. Obviously, such restrictions are rarely applied. Moreover, the First Amendment public right of access to court proceedings has been held to outweigh even a criminal defendant's due process right to a fair trial except in the most exceptional circumstances. Press-Enterprise Co. v. Superior Court, 478 U.S. 1
(1986).
In Press-Enterprise Co. the State of California charged Robert Diaz, a nurse, with murdering twelve patients and sought the death penalty. Diaz moved to exclude the public from the preliminary hearing under Cal. Penal Code Ann. § 868 (West 1985), which required such proceedings to be open unless "exclusion of the public is necessary in order to protect the defendant's right to a fair and impartial trial." The Magistrate granted the unopposed motion. At the conclusion of the hearing, Press-Enterprise Co., a newspaper publishing company, asked that the transcript of the proceedings be released. Diaz opposed the motion, contending that release of the transcript would result in prejudicial pretrial publicity. The Superior Court refused to unseal the file and release the transcript, which decision was affirmed by the California Supreme Court on the grounds that there is no genera] First Amendment right of access to preliminary hearings. Press-Enterprise Co. appealed that decision to the United States Supreme Court which held that the public right of access applies to preliminary hearings. The Court relied first on the long tradition of accessibility to preliminary hearings, including the celebrated trial of Aaron Burr for treason, in which Chief Justice Marshall sat as trial judge, and the probable-cause hearing was held in the Hall of the House of Delegates in Virginia, because the courtroom was too small to accommodate the crush of interested citizens. United States v.CT Page 9800Burr, 25 F. Cas. 1 (No. 14,692) (CC Va. 1807). Second, the Court pointed to the positive role which public access to court proceedings plays in the functioning of the judicial process:
 "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." Richmond Newspapers, 448 U.S., at 572.
 Denying the transcript of a 41-day preliminary hearing would frustrate what we have characterized as the "community therapeutic value" of openness. Id., at 570. Criminal acts, especially certain violent crimes, provoke public concern, outrage, and hostility. "When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions." Press-Enterprise I, 464 U.S., at 509. See also H. Weihofen, The Urge to Punish 130-131 (1956); T. Reik, The Compulsion to Confess (1959). In sum:
 "The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." Press-Enterprise I, supra, at 508 (emphasis in original).
478 U.S. at 13.
Having found the existence of a First Amendment right of public access at a preliminary hearing, the Court stated that "[t]he First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of that right [to a fair trial by an impartial jury]. And any limitation must be narrowly tailored to serve that interest."478 U.S. at 15.
In Press-Enterprise the First Amendment right of public access was sufficiently strong to outweigh the defendant's due process right to a fair trial, even where the defendant was CT Page 9801 accused of twelve murders. Clearly then, public access must outweigh the defendants' right to a "good reputation," particularly where the defendants have presented no evidence that unsealing the file here will have an adverse impact on the defendants' reputation.
For the reasons set forth above the court finds that the defendants have not established the "overriding interest" required by Practice Book § 11-20 as the basis for an order to seal the file. The Motion to Continue Seal of File is denied.
Motion for Protective Order
The defendants are seeking a protective order pursuant to Practice Book § 13-5, formerly § 221, which will prohibit disclosure to the media or the public of information which the plaintiff may obtain in discovery through the defendants or through other persons. Unlike the issues discussed above, the request to limit dissemination of discovery materials does not implicate the First Amendment. Discovery is not a public component of a civil trial. Seattle Times v. Rhinehart,467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17, 27 (1984).
Restrictions on the use of discovery materials may be warranted where the allegations are of an inflammatory nature and publication of discovery material would serve no better purpose than to "titillate the public." Joy v. North, 692 F.2d 880, 893
(2d Cir. 1982). In considering the imposition of a protective order the court must consider the reasonable privacy interests of the defendants, Seattle Times v. Rhinehart, supra, as well as the injury to their professional standing which could result from dissemination of discovery materials prior to trial. ShenandoahPublishing House v. Fanning, 368 S.E.2d 253, 257-258 (Virginia, 1988).
The plaintiffs oppose a protective order primarily because they fear that it will interfere with their ability to prepare for trial. The defendants' primary goal in moving for the protective order is to prevent dissemination of discovery material to the media and the public. The Protective Order appended hereto will prohibit public disclosure of discovery materials without interfering with the plaintiffs' ability to prepare their cases.
Protective Order
CT Page 9802
1. Until further order of the Court, no parties to this action shall make use of any information, documents or transcripts which the parties may obtain through discovery other than such use as is necessary in order for the discovering party to prepare and try the case or any related claim, case or proceeding involving the defendants. Information obtained by any party through discovery may not be published by any of the parties or made available to any news media for publication or dissemination.
2. All documents or transcripts described in paragraph one which the attorneys representing any of the parties believe in good faith may be entitled to protection from disclosure shall be marked: "CONFIDENTIAL: SUBJECT TO COURT ORDER" and shall be submitted to the Court for review and appropriate order before released from the protection afforded by this order.
3. Whenever any pleading, document or motion referencing, incorporating or attaching any documents described in paragraph one of this order is filed with the Court or delivered to any judge thereof, it shall be filed or delivered under seal pending review by the Court and shall be marked by the party filing or delivering same "CONFIDENTIAL: SUBJECT TO COURT ORDER."
Aurigemma, J.