**MERIT INDUSTRIES, INC.,**

v.

**Peter FEUER, Adrienne Feuer, and Millenium Reserve Corp.**

**No. CIV.A. 00–CV–2531.**

United States District Court,
E.D. Pennsylvania.

June 28, 2001.

Steven B. Feirson, Michael L. Kichline, Andrew S. Miller, Dechert, Price & Rhoads, Philadelphia, PA, for plaintiffs.

M. Norman Goldberger, Abbe F. Fletman, Jennifer E. Biderman, Laura E. Krabill, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, PA, for defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

By way of the motion presently before the Court, Defendants request that the Court reclassify certain documents which Plaintiff has designated as "highly confidential-for attorneys' eyes only" (thereby preventing those documents from being seen by the defendants themselves) to "confidential" (entitling defendants to access them to assist in the preparation of their defense). For the reasons which follow, the motion shall be granted.

### Background

This case has its origins in the sale of the assets of defendants' amusement game manufacturing business, Merit Industries, Inc. ("Old Merit") to Merit Acquisition Corporation ("MAC") in August, 1998. As part and parcel of the sales transaction, Defendant Peter Feuer, Old Merit's sole owner and founder, became a shareholder and member of the Board of Directors of MAC and executed a non-competition agreement under which he agreed to refrain from engaging in any competing business for five years. Mr. Feuer also agreed to and did stay on as an employee of Merit Industries (now "New Merit") and continued to run the day-to-day operations of the business until February, 1999 when New Merit hired a new Chief Executive Officer.[1]

Shortly thereafter, New Merit experienced a significant decline in sales, particularly to its overseas customers. Plaintiff's complaint

---

1. At some point after the asset purchase, Merit Acquisition Corp. changed its name to Merit Industries, Inc.

avers that the defendants effectively misrepresented the company's financial picture prior to the sale of the company by, *inter alia,* tax evasion, conspiring and bribing overseas distributors into buying large quantities of games and otherwise misrepresenting the nature of the company's business practices. Plaintiff seeks relief under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), the common law theories of breach of contract and fraud, and a declaratory judgment. For their part, Defendants deny any wrongdoing and assert that Plaintiff's damages were caused by its own mismanagement or by changing market conditions over which Defendants had no control.

Subsequent to the filing of the complaint, the parties negotiated and entered into a Confidentiality Agreement which was approved by the Court on February 20, 2001. Under the terms of that agreement, any matter stamped "Confidential" is not to be shown, discussed or otherwise made available to anyone other than (1) counsel for the parties and any of the employees thereof to whom access is necessary for purposes of this lawsuit only; (2) outside experts employed or retained by a Party; (3) the parties; (4) court reporters; and (5) the Court. However, if a party believes that any Confidential Matter is of such a nature that it should not be shown to the opposing party, the producing party may label it "Highly Confidential." Counsel for the opposing party is then permitted to examine the material to determine whether he or she will agree to the "Highly Confidential" designation. If the designation is objected to, the producing party has 10 days to respond to the objection and the parties have fifteen days thereafter to resolve the matter. If they cannot reach an agreement after that time, the objecting party may file a motion with the Court.

In this case, Defendants aver that Plaintiff has produced some six boxes of materials which it has designated "Highly Confidential." Included among these materials are numerous public records such as issued U.S. patents and brochures for dart games sold by Merit dating back to 1995, invoices and correspondence relating to international customers of both Old Merit and New Merit, the company's business plan for the year 2000, financial statements, organizational charts and monthly financial reports. Defendants assert that since they had already been privy to many of these documents when Peter Feuer was Merit's sole owner and their primary defense to this suit is the current mismanagement of the company, the "Highly Confidential" designation is improper. Plaintiff argues that the designation is necessary to protect its most sensitive business information from being revealed to its competitors.

### Discussion

■ It is well-established that courts have the power to grant confidentiality orders over material not on file with the court and that a district court retains the power to modify or lift confidentiality orders that it has entered. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33, n. 19, 104 S.Ct. 2199, 2207, n. 19, 81 L.Ed.2d 17 (1984); *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 784, 785 (3rd Cir.1994).

■ Similarly, Fed.R.Civ.P. 26(c)(7) permits "a party" or "person from whom discovery is sought" to move the court for a protective order and provides that "for good cause shown," the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense including ... that a trade secret or other confidential research, development or commercial information not be revealed or be revealed only in a designated way ..." Thus, the power to grant confidentiality orders is not unlimited and such orders should not be granted arbitrarily. *Lee v. A.R.T. Studio Clay Company, Inc.,* 2001 WL 503393, 2001 U.S. Dist. LEXIS 6078 (E.D.Pa.2001).

■ It has been held that "good cause" is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. *Pansy,* 23 F.3d at 786, citing *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1071 (3rd Cir.1984). Broad allegations of harm, unsubstantiated

by specific examples or articulated reasoning, do not support a good cause showing. The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order. *Id. See also McKenna v. City of Philadelphia*, 2000 WL 1521604, *1, 2000 U.S. Dist. LEXIS 15735, *3 (E.D.Pa.2000).

■ The Third Circuit has further recognized several factors, which are neither mandatory nor exhaustive, that may be considered in evaluating whether good cause exists:

1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate purpose or for an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public.

*Glenmede Trust Company v. Thompson*, 56 F.3d 476, 483 (3rd Cir.1995), citing *Pansy*, 23 F.3d at 787–791. What's more, the district court's analysis of these factors should always reflect a balancing of private versus public interests and discretion should be left with the court to evaluate the competing considerations in light of the facts of individual cases. By focusing on the particular circumstances in the cases before them, courts are in the best position to prevent both the overly broad use of confidentiality orders and the unnecessary denial of confidentiality for information that deserves it. *Id. See also County Council of Northampton County v. SHL Systemhouse Corp.*, 182 F.R.D. 161, 163 (E.D.Pa.1998).

In application of all of the foregoing, we cannot find that the plaintiff has met its burden of proving that disclosure of the materials at issue pursuant to the designation of "Confidential" will cause a clearly defined and serious injury. For one, many of the documents sought to be limited to attorney's eyes only were generated in the course of Old Merit's business and in some instances were directed to or authored by Peter Feuer himself. Thus, it is unlikely that disclosure of these documents to the defendants will cause Plaintiff any undue embarrassment.

What's more, we note that the plaintiff has raised several very serious claims against the defendants, some of which border on alleged criminal conduct. Given that the defendants are entitled to participate in the preparation of their own defense, it therefore appears that the information which Defendants seek in discovery is for a legitimate purpose and that the interests of fairness and efficiency will be served by allowing them to have access to the documents, again subject to the "Confidential" designation.

■ In support of its position, the plaintiff argues that the documents in question, which comprise New Merit's most sensitive business information, warrant the attorneys' eyes only protection provided by the "Highly Confidential" designation because defendant Peter Feuer has a confirmed business relationship with one of New Merit's chief competitors, Tekbilt, Inc. Plaintiff further avers that New Merit's highly confidential organizational chart has fallen into Tekbilt's possession and Tekbilt has successfully recruited several of the employees on New Merit's chart. Our review of the record, however, reflects that Tekbilt, which used to sell bill acceptors to Merit, is primarily engaged in the manufacture of casino games which actually pay money to "winning" patrons. Merit, on the other hand, manufactures amusement games which are typically sold to taverns, restaurants and similar outlets and which do not award cash payouts to their patrons. Thus, there is no evidence that the two companies are direct competitors, at least not at present. Moreover, there is no evidence that Merit's organizational chart was given to anyone at Tekbilt by Mr. Feuer or that Mr. Feuer played any role whatsoever in recruiting Merit employees for Tekbilt. Rather, it appears that several of Merit's former

employees followed Donald Fahey, who was terminated by New Merit from his position as Merit's Chief Operating Officer in April, 1999, to Tekbilt, only after they were terminated by Merit or felt that their positions at Merit were threatened.

Likewise, although Mr. Feuer admits to having visited the Tekbilt premises on some 3–4 occasions in the last several months, Plaintiff has adduced no evidence to refute that produced by the defendants that Mr. Feuer's visits were occasioned by his meeting Mr. Fahey for lunch or that Mr. Feuer has any business relationship whatsoever with Tekbilt, anyone at Tekbilt or with any other person or entity in the amusement game industry. There thus being no evidence to sustain Plaintiff's claims and particularly in light of the fact that the plaintiff has asserted no claim against Mr. Feuer for breach of his non-competition agreement, we cannot find that the plaintiff has met its burden of showing that the "Confidential" designation is insufficient to protect its sensitive business information or of showing "good cause" to preclude the defendants themselves from having access to the disputed materials in the preparation of their defense.

For these reasons, the motion to re-designate the documents from "Highly Confidential" to "Confidential" shall be granted pursuant to the attached order.

### ORDER

AND NOW, this day of June, 2001, upon consideration of the Motion of Defendants to Re-designate Documents Designated By Plaintiff as "Highly Confidential" and to Compel the Production of Documents and Plaintiff's response thereto, it is hereby ORDERED that the Motion is GRANTED for the reasons set forth in the preceding Memorandum Opinion.