JAMES L.'DENNIS, Circuit Judge,
dissenting.
Five Texas merchants, the plaintiffs in this case, allege that they wish to post two prices for the goods and services that they offer: one price that will apply if the customer pays in cash, another that will apply if the customer pays by credit card. They wish to tell their customers that the difference between these two prices is a “surcharge” for using a credit card, rather than a “discount” for using cash. The merchants claim that they have not instituted such a pricing practice because they fear that they will be held liable under the Texas Anti-Surcharge Law, not for charging less for cash purchases than for credit, but rather for describing the difference between the two prices as a “surcharge” instead of as a “discount.”[1] They complain that this restriction on their characterization of the price difference is an unconstitutional violation of their First Amendment rights.
As the majority explains, a surcharge is “an additional amount above the seller’s regular price.” Op. at 83. The State asserts that “Texas’s Anti-Surcharge Law regulates a pricing practice—ie., surcharging credit-card customers—not infor *85 mation about a lawful transaction.” And in affirming the district court’s dismissal of the plaintiffs’ First Amendment claims, the panel majority characterizes the Anti-Surcharge Law as an economic regulation because it “solely bans application of additional fees above the normal price and nothing more.” Id,. But the State concedes, and the panel majority recognizes, that “dual-pricing schemes” of the sort described by the merchants are allowed under the statute, and thus, the merchants may legally post a higher credit-card price and a lower cash price for the same item. A merchant who describes the difference between these prices as a surcharge is not assessing “additional” fees .above a “regular” price; he is only characterizing a perfectly legal price differential in a chosen way. If he violates the Anti-Surcharge Law it is because of the content of his speech, not because of the nature of his conduct.
Perhaps inadvertently, the panel majority admits that the Anti-Surcharge Law does not only regulate economic conduct but, when applied to dual-pricing schemes, prohibits the use of words to convey a particular message. Distinguishing this case from Expressions Hair Design v. Schneiderman, 808 F.3d 118, 137 (2d Cir. 2015), where it was “far from clear” that New York’s anti-surcharge law applied to dual-pricing schemes, the majority writes: “Here, on the other hand, the parties concede dual pricing is allowed; the merchants simply object to their inability to characterize price differentials as a ‘surcharge’, juxtaposed with a ‘discount’,” op. at 83. The majority does not—and, I suggest, cannot—explain how a law that affects merchants’ ability to characterize legal jlrice differentials as “surcharges” rather than as “discounts” is not a content-based restriction on speech subject to First Amendment scrutiny. See, e.g., Sorrell v. IMS Health Inc., 564 U.S. 552, 131 S.Ct. 2653, 2665, 180 L.Ed.2d 544 (2011) (“An individual’s right to speak is implicated when information he or she possesses is subjected to ‘restraints on the way in which the information might be used’ or disseminated.”) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)).
In fact, although the Second Circuit in Expressions declined to discuss the effect that Section 518, New York’s anti-surcharge law, might have on dual pricing schemes, the court’s opinion illuminates the critical distinction—elided by the panel majority—between the regulation of pricing and the regulation of the speech used to describe it. , The court determined that Section 518 does not violate the First Amendment as applied to single-sticker-price schemes, where merchants “post only a single, price for their goods and services and charge more than that price to credit-card purchasers.” 808 F.3d at 128. The court emphasized that “Section 518 does not prohibit all differentials between the price ultimately charged to cash customer's and the price ultimately charged to credit-card customers,” id., and that “[b]y its terms, Section 518 does not prohibit sellers from referring to credit-cash price differentials as credit-card surcharges, or from engaging in advocacy related to credit-card surcharges,” id. at 131. Instead, the court explained:
What Section 518 regulates—all that it regulates—is the difference between a seller’s sticker price and the ultimate price that it charges to credit-card customers. A seller imposing a surcharge (an additional amount above its sticker price) on credit-card customers could choose to “characterize” that additional charge as whatever it wants, but that would.not change the fact that it would be violating Section 518. Conversely, a seller offering' a discount (a reduction *86 from its sticker price) to cash customers c'ould choose, to “characterize” that redaction as whatever, it wants (including as a “credit-card surcharge”), but that would not change the fact that the seller would not be violating Section 518.
Id. at 132 (emphasis added). In other words, part of what made the New York law a purely economic regulation was the fact that, although it restricted merchants’ ability to set their prices as they wished, it did not restrict their ability to describe their prices or discuss the reasoning underlying the prices. If the credit card fee increased the price of a $100 item by $2, the merchant had to include that $2 in the single sticker price in order to pass the cost to the customer—but he could tell the customer that, she could avoid the $2 “credit card surcharge” by paying in cash.
As.applied to dual-pricing schemes, the Texas law does not regulate the difference between prices; the State admits .that the law permits merchants to, post a cash price and a higher credit price for the same item. All that it regulates is what merchants can tell customers about their prices. I cannot see how such a restriction can avoid First Amendment scrutiny.' Nor can I see. how such a restriction can survive it. Under Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York, 447 U.S. 557, 566, 100 S.Ct. 2343 (1980), the State must present evidence to establish that the statute “directly advances” a “substantial” government interest and “is not more extensive than is necessary to serve that interest.”[2] See also Sorrell, 131 S.Ct. at 2667-68. The State has asserted that “the law effectively sets the maximum price for credit-card purchases as the posted price, while also restricting merchants’. ability to obtain windfall profits and limiting consumer confusion.” But if Texas truly wanted to “set[] the maximum price for credit-card purchases” and “restrict merchants’ ability to obtain windfall profits,” it could pass a law tying credit-card surcharges to swipe fees. Such a law would also standardize surcharges, eliminating the risk of consumer confusion and allowing consumers to effectively compare prices. Instead, the State has prohibited merchants from justifying their maximum prices to their customers by preventing them from characterizing the differential between cash and credit prices as a surcharge. Even if the State can show that its interest in enacting the law'is substantial and that the law directly advances that interest, the restriction therefore falters on the final Central Hudson prong. See 447 U.S. at 565, 100 S.Ct. 2343 (“The regulatory technique may extend only as far as the interest it sdrves.”).
By permitting merchants from describing the difference between cash and credit prices as a “discount” while prohibiting them' from describing it as a “surcharge,” the Texas Anti-Surcharge Law makes the legality of a price differential turn on the language used to describe it. This is not a regulation of pricing or of other economic activity, but regulation of protected commercial speech, and one that I believe cannot survive First Amendment scrutiny. For these reasons, contrary to the majority, I conclude that the defendants’ motion *87 to dismiss should have been denied,- that the enforcement of the Texas Anti-Surcharge Law should have been preliminarily enjoined, and that the case should be remanded for further proceedings. Accordingly, I respectfully dissent.

. The first prong of Central Hudson functions to .permit regulation of speech that is either misleading or related to unlawful activity. Here, the State cannot claim that the speech at issue is misleading; the merchants simply want to truthfully explain the effect of credit card processing fees. And the State cannot argue that the speech relates to unlawful activity without employing the • most flagrant tautological reasoning; the speech .only “relates to unlawful activity” in the sense that, under the statute, the speech itself renders the conduct unlawful.