Patrick D. BOWLEN, PDB Sports, Ltd., PDB Enterprises, Inc., PDB Sports Holdings, Inc., John M. Bowlen, William A. Bowlen, and Mary Beth Jagger, Petitioners,

v.

DISTRICT COURT, COUNTY OF ADAMS, State of Colorado, and the Honorable Michael A. Obermeyer, one of the judges thereof, Respondents.

No. 86SA287.

Supreme Court of Colorado.

Jan. 20, 1987.

Kelly/Haglund/Garnsey & Kahn, Edwin S. Kahn, Denver, for petitioner PDB Sports, Ltd.

Davis, Graham & Stubbs, Thomas S. Nichols, Dale R. Harris, Denver, for petitioners Patrick D. Bowlen, PDB Enterprises, Inc., PDB Sports Holdings, Inc., John M. Bowlen, William A. Bowlen, Mary Beth Jagger.

Calkins, Kramer, Grimshaw & Harring, Ward L. Van Scoyk, Richard L. Harring, Mark A. Nadeau, Denver, Crosby, Heafey, Roach & May, Professional Corp., Edwin A. Heafey, Jr., Andre L. de Baubigny, Oakland, Cal., for JRA Sports, Ltd.

Gibson, Dunn & Crutcher, George B. Curtis, David Schieferstein, Denver, for amicus curiae The Denver Post Corp.

Baker & Hostetler, James A. Clark, Kathryn A. Nielson, Denver, for amicus curi-

ae The Denver Pub. Co., d/b/a Rocky Mountain News.

ERICKSON, Justice.

In this original proceeding, petitioners seek a writ of mandamus to compel the district court to reinstate a protective order issued pursuant to C.R.C.P. 26(c). The protective order sought by petitioners is to prevent the plaintiffs in the civil action in the district court from disclosing confidential business and financial information obtained through pretrial discovery. The district court entered a blanket protective order, but rescinded the order after discovery proceedings were undertaken and the views of news media representatives were made known to the court. We issued a rule to show cause and now make the rule absolute in part, and remand to the trial court with directions to conduct a further hearing to determine whether a protective order should be entered under the good cause standard set forth in C.R.C.P. 26(c) and in light of *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).[1]

## I.

A civil action was brought to resolve disputes between the current owners and former part-owners of the Denver Broncos Football Club (Broncos). The petitioners are named defendants in the court below. Petitioner PDB Sports, Ltd. (Sports, Ltd.), a limited partnership, is the owner of the Denver Broncos. Petitioner Patrick D. Bowlen (Bowlen) is the general partner of Sports, Ltd., and petitioner PDB Enterprises, Inc. (PDB Enterprises) is the sole limited partner.

JRA Sports, Inc. (JRA) was the limited partner of Sports, Ltd. until 1985. In 1985, JRA sold its interest to PDB Enterprises for cash and a $16,000,000 promissory note. The promissory note, payable in a lump sum in 1990, was executed by PDB Enterprises, and was unconditionally guaranteed by Bowlen. The 1985 purchase agreement between JRA and PDB Enterprises prohibited direct or indirect distributions of funds from the Broncos to Bowlen, his nominees or affiliates. If distributions were to be made, the agreement required Bowlen to pay JRA 2.333 times the amount of any distribution until the note was paid in full. JRA alleges that semi-annual audits revealed direct distributions to or on the behalf of Bowlen of $474,357. The audits also allegedly revealed that Bowlen had obtained a $13,000,000 loan from a Denver bank and that the Broncos guaranteed the loan. JRA alleges that the guaranteed bank loan constituted an indirect distribution to Bowlen, which triggered the mandatory prepayment obligation in the 1985 purchase agreement. Consequently, JRA claims that the full balance of the $16,000,000 note is now due, and that petitioners are currently in default.

When the civil action was filed, the district court ordered expedited discovery. In

1. C.R.C.P. 26(c) states:

    Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) That the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

    If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(3) apply to the award of expenses incurred in relation to the motion.

discovery proceedings, JRA requested Bowlen to produce all documents, ledgers, and checks relating to Bowlen's dealings with Sports, Ltd. and PDB Enterprises. A subpoena served on a Denver bank required the bank to produce all documents relating to loans made to the petitioners during the years 1984–1986.

Petitioners sought a protective order to require that documents and other materials produced in the discovery proceedings be kept confidential, and used only for the preparation of the plaintiff's case. An interim protective order precluding disclosure of discovery materials to third persons was entered by the court, but the court reserved the right to reconsider the protective order. After discovery commenced, media representatives were contacted and the court concluded that the protective order should be rescinded because the local National Football League franchise was a matter of public interest, and the burden of overcoming the "presumption of openness" for civil trials had not been met by the petitioners.

## II.

The proper standard for the issuance of a protective order to limit access of the public or the media to information derived exclusively from the civil discovery process must be determined in this case. The question before us is whether the district court abused its discretion in requiring the petitioners to bear the "burden of overcoming a strong presumption of openness and [to show] an overriding interest sufficient to outweigh the public's interest in free speech and press." In our view, the trial court abused its discretion by determining the motion on the wrong standard.

The district court applied a standard that grants heightened first amendment rights to the public and the media when discovery proceedings involve a matter of public interest. The Washington Supreme Court, in reviewing the reasons for entering a protective order under a rule that is identical to the Colorado rule, said:

Why are protective orders needed? There has never been any question but that the individual's interest in commercially valuable information, such as "trade secrets", deserves protection. But the language of CR 26(c) [identical to C.R.C.P. 26(c)] makes it clear that interests other than financial warrant protection under the rule. Protective orders may be entered to prevent "annoyance, embarrassment, oppression, or undue burden or expense".

Implicit in this language is a recognition that by requiring a party to submit to the searching inquiries of discovery, the courts have required him to give information about himself which he would otherwise have no obligation to disclose. A realm of privacy which courts had previously left undisturbed was now opened. True, as to all information derived through these proceedings and admitted at trial, a party's interest in privacy must be sacrificed to the needs of adjudication. But as to other information which he is forced to give under the liberal rules of discovery, the effective administration of justice does not require dissemination beyond that which is needed for litigation of the case. It was the needs of litigation and only those needs for which the courts adopted this rule and demanded of the litigant a duty which would not otherwise be his. For this reason, it is proper that the courts be slow to subject a civil litigant to any exposure which he deems offensive, beyond that which serves the purpose of the rule.

*Rhinehart v. Seattle Times Co.*, 98 Wash.2d 226, 236, 654 P.2d 673, 679 (1982), *aff'd* 467 U.S. 20, 104 S.Ct. 2199; 81 L.Ed.2d 17 (1984).

The United States Supreme Court, in affirming the Washington Supreme Court, held that because of the particular nature of the discovery process, litigants, the public, and the media have a restricted first amendment right of access to information made available only for the purpose of trying a lawsuit. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, 104 S.Ct. 2199,

2207, 81 L.Ed.2d 17 (1984). However, the right to speak and publish does not create an unfettered and unlimited right to gather information made available solely for discovery purposes. As the high Court said in *Seattle Times*, 467 U.S. at 32, 104 S.Ct. at 2207:

> "The critical question ... is whether a litigant's freedom comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in which the information might be used. In addressing that question it is necessary to consider whether the "practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression" and whether "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez*, 416 U.S. 396, 413 [94 S.Ct. 1800, 1811, 40 L.Ed.2d 224] (1974); see *Brown v. Glines*, 444 U.S. 348, 354–355 [100 S.Ct. 594, 599, 62 L.Ed.2d 540] (1980); *Buckley v. Valeo*, 424 U.S. 1, 25 [96 S.Ct. 612, 637, 46 L.Ed.2d 659] (1976).

We consider *Seattle Times* dispositive of the issues in this case.

▮ The scope and breadth of the right of the public and the media to gain access to and to disseminate information obtained exclusively through discovery proceedings in a civil action is not precisely defined. The *Seattle Times* majority indicated that there was no first amendment right of access to such materials before trial, *Seattle Times*, 467 U.S. at 22, 104 S.Ct. at 2201, but looked to a balancing test which assumed the existence of a limited first amendment right. *Seattle Times*, 467 U.S. at 32, 104 S.Ct. at 2207. *See also*, 467 U.S. at 37, 104 S.Ct. at 2210 (Brennan, J., concurring) ("The Court today recognizes that pretrial protective orders ... are subject to scrutiny under the first amendment."). We need not decide the exact degree to which pretrial discovery proceedings are insulated or protected from public disclosure by the first amendment, because the Court concluded that the "good cause" showing required by the Washington counterpart to C.R.C.P. 26(c) is sufficient to safeguard whatever rights the public or media possess. *Seattle Times*, 467 U.S. at 37, 104 S.Ct. at 2210.

The rationale for limiting access to discovery materials is twofold. First, the scope of discovery is extremely broad. C.R.C.P. 26(b)(1) provides that a party may obtain discovery of any relevant, nonprivileged material, and that the standard for discovery is whether the information sought is reasonably calculated to lead to the discovery of admissible evidence. *See also Kerwin v. District Court*, 649 P.2d 1086 (Colo.1982); *Lucas v. District Court*, 140 Colo. 510, 345 P.2d 1064 (1959). As a result, parties are able to discover evidence that may be only tangentially related to the cause of action being litigated. *Seattle Times*, 467 U.S. at 33, 104 S.Ct. at 2208. Discovery provides a way to obtain information that would be unavailable but for the broad scope of C.R.C.P. 26(b) and is subject to abuse. "This abuse is not limited to matters of delay and expense; discovery may also seriously implicate privacy interests of litigants and third parties." 467 U.S. at 34–35, 104 S.Ct. at 2208–09 (footnote omitted). Courts therefore have a substantial role in supervising discovery, including limiting the use of discovered information, because the unfettered use of the rules and procedures of discovery allows an opportunity "for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy." 467 U.S. at 35, 104 S.Ct. at 2209.

The second reason for permitting control of the use of discovered material is that discovery, unlike a civil or criminal trial, is traditionally and normally a private affair between the litigants and the custodians of the information they seek. *Seattle Times*, 467 U.S. at 33, 104 S.Ct. at 2208. Moreover, a protective order such as petitioners seek does not raise the specter of classic

prior restraint under the first amendment. *Id.*

The information JRA seeks to discover involves private and confidential financial affairs of the petitioners which is only available because of the broad scope of C.R.C.P. 26(b)(1) and the sanctions provided in C.R.C.P. 37 for failure to comply with required discovery. Even if the pending litigation is a matter of public interest rather than an ordinary dispute between private litigants, C.R.C.P. 26(c)(7) and *Seattle Times* permits the trial court to protect petitioners' private affairs from public disclosure until the material is admitted in the trial of the case. The trial judge abused his discretion by imposing a more rigid requirement than that set forth in C.R.C.P. 26(c) for a protective order.

The rule is made absolute in part, and the cause is remanded to the district court with directions to determine petitioners' request for a protective order in light of the "good cause" standard of C.R.C.P. 26(c).

DUBOFSKY, J., does not participate.