[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTIONS FOR PROTECTIVE ORDERS
The plaintiff alleges that he was sexually assaulted by the defendant Raymond Pcolka while Pcolka was a priest employed by the defendant Bridgeport Roman Catholic Diocesan Corporation (Diocese). During the times that the plaintiff alleges that he was assaulted by Pcolka, the defendant Bishop Walter Curtis was the chief officer of the Diocese. The plaintiff alleges that the Diocese and Bishop Curtis are liable for his assault based on their negligent supervision of Pcolka and on the doctrine of respondeat superior.
The plaintiff noticed the depositions of Pcolka, Bishop Curtis and Bishop Edward Eagan. Pursuant to Practice Book § 244(f)[1] the plaintiff included in that notice a request that the defendants produce certain documents at those depositions. Pursuant to Practice Book § 221[2], the defendants have moved for protective orders with respect to those requests to produce and also have moved for a protective order with respect to the "use and dissemination" of discovery information obtained through the depositions.
 I.
With respect to the defendants' motion for protective order directed to the plaintiff's request that the defendants produce documents kept by them pertaining to the defendant Pcolka, the court finds that all such documents are contained in what constitutes a "personnel file", as defined in General Statutes § 31-128a(3).[3] This is so notwithstanding evidence that the Diocese, CT Page 12423 in fact, may not be the "employer" of Pcolka for all purposes. However, the plaintiff has alleged that the Diocese is Pcolka's employer, the Diocese and the Roman Catholic Church are organizations sui generis, and the evidence indicates that, if only for purposes of discovery, it is appropriate to treat the Diocese as the employer. The contents of that personnel file are subject to disclosure in the discretion of the court pursuant to the express terms of General Statutes § 31-128f, notwithstanding Pcolka's claims to the contrary.
General Statutes § 31-128f provides in relevant part: "No individually identifiable information contained in the personnel file or medical records of any employee shall be disclosed by an employer to any person or entity not employed by or affiliated with the employer without the written authorization of such employee except . . . where the disclosure is made . . . (2) pursuant to a lawfully issued . . . judicial order, including a . . . subpoena, or in response to . . . defense of personnel-related complaints against the employer. . . ." Notably, neither this statute nor any other to which the court's attention has been directed confers a general privilege or confidential status on the personnel files of private institutions. Compare General Statutes §§ 52-146b to 52-146q; cf. General Statutes § 1-19(b)(2) (restricting the disclosure of personnel files of a public agency;Hartford v. Freedom of Information Commission, 201 Conn. 421, 429-30,518 A.2d 49 [1986]).
That the file is subject to disclosure, however, does not end the matter. "`The granting or denial of a discovery request rests in the sound discretion of the court.' Standard Tallow Corporationv. Jowdy, 190 Conn. 48, 57, 459 A.2d 503 (1983); Kiessling v.Kiessling, 134 Conn. 564, 568, 59 A.2d 532 (1948). That discretion applies to `decisions concerning whether the information is material, privileged, substantially more available to the disclosing party, or within the disclosing party's knowledge, possession or power. . . .' Standard Tallow Corporation v. Jowdy,
supra, 59-60." Brown v. Housing Authority, 23 Conn. App. 624,583 A.2d 643 (1990). "`Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.'" State v. Arbour, 29 Conn. App. 744, 748, 618 A.2d 60
(1992).
Generally, the rules of civil discovery are liberally CT Page 12424 construed. Lougee v. Grinnell, 216 Conn. 483, 489, 582 A.2d 456
(1990); Sanderson v. Steve Snyder Enterprises, Inc., 196 Conn. 134,140, 491 A.2d 389 (1985). This judicial policy, however, is qualified where the object of discovery is a personnel file. "The disclosure of such information must be carefully tailored to a legitimate and demonstrated need for such information in any given case. Where disclosure of the personnel file would place in the hands of a [party] irrelevant or personal and sensitive information concerning . . . [another], the entire file should not be disclosed. No . . . [party] has the right to conduct a general `fishing expedition' into the personnel records of a[nother]. Any request for information that does not directly relate to legitimate issues that may arise in the course of the . . . [trial] ought to be denied. In recognizing the danger of permitting the disclosure of personnel records of any witness or litigant, one court has said: `It has been widely noted that such records often contain raw data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility.' People v. Sumpter, 75 Misc.2d 55,60, 347 N.Y.S.2d 670 (1973) Because discovery of matters contained in a . . . personnel file involves careful discrimination between material that relates to the issues involved and that which is irrelevant to those issues, the judicial authority should exercise its discretion in determining what matters shall be disclosed. An in camera inspection of the documents involved, therefore, will under most circumstances be necessary. See United States v. Nixon,418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Commonwealthv. Dominico, [1 Mass. App. 693, 306 N.E.2d 835 (1974)]; Peoplev. Bottom, 76 Misc.2d 525, 351 N.Y.S.2d 328 (1974). . . . [I]n resolving requests for disclosure, routine access to personnel files is not to be had. Requests for information should be specific and should set forth the issue in the case to which the personnel information sought will relate. The trial court should make available to the [party] only information that it concludes is clearly material and relevant to the issue involved. See Peoplev. Fraiser, 75 Misc.2d 756, 757, 348 N.Y.S.2d 529 (1973) (subpoena duces tecum issued for personnel files of police witnesses in prosecution for possession and sale of controlled drugs). In this regard, the trial court should exercise its discretion in deciding the temporal relevancy or remoteness of material sought. Cf. State v. Carbone, 172 Conn. 242, 262,374 A.2d 215, cert. denied, 431 U.S. 967, 97 S.Ct. 2925,53 L.Ed.2d 1063 (1977); State v. Mahmood, 158 Conn. 536, 540, 265 A.2d 83
(1969); State v. Towles, 155 Conn. 516, 523-24, 235 A.2d 639
CT Page 12425 (1967) (relating to the introduction of evidence at trial); see also 1 Wharton, Criminal Evidence (12th Ed.) 151. Because the law furnishes no precise or universal test of relevancy, the question must be determined on a case by case basis according to the teachings of reason and judicial experience." State v.Januszewski, 182 Conn. 142, 172-173, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981); seeState v. Harris, 227 Conn. 751, 765-768, 631 A.2d 309 (1993). Although Januszewski involved an attempt by a criminal defendant to subpoena the personnel file of a police officer witness in a criminal prosecution in order to impeach the officer's credibility, the policies and pronouncements in that case are largely applicable here. In camera review by the court reasonably satisfies the plaintiff's need for information necessary to establish his case while respecting a civil defendant's limited expectation of privacy in his personnel file as reflected in the implicit policy of General Statutes § 31-128f that the documents in such files not be cavalierly divulged by an employer.
Accordingly, the court has undertaken an in camera review of Pcolka's personnel file and orders certain documents disclosed to the plaintiff contemporaneously with the filing of this decision. The report of the Institute of Living, to which reference was made during oral argument, shall not be disclosed at this time, there having been no showing that that report is not protected from disclosure by General Statutes §§ 52-146d to 52-146f.[4]
 II.
In his notices of deposition the plaintiff also has requested "[a]ll documents, correspondence, memoranda, notes, communications, concerning any complaints, investigations, disciplinary proceedings, or dispositions ever received by the diocese, the bishop or any agent of [sic] employee of the Diocese regarding sexual misconduct by [any] priests who at any time were members of the Diocese. Any records concerning any documents concerning sexual misconduct by [any] priests which may have been transferred or destroyed and are thus no longer in the possession of the Diocese." (Sic)
A request for production of documents whether made in connection with a notice of deposition or made independent of such a notice must be within the ambit of the scope of discovery as defined in Practice Book § 218. See Practice Book §§ 227, 244(f). Practice Book § 218 provides in relevant part: "In any civil CT Page 12426 action . . . a party may obtain in accordance with the provisions of this chapter discovery of information or disclosure, production and inspection of papers, books or documents material to thesubject matter involved in the pending action, which are notprivileged, whether the discovery or disclosure relates to the claim or defense of the party seeking discovery or to the claim or defense of an other party, and which are within the knowledge, possession or power of the party or person to whom the discovery is addressed. Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action and if it can be provided by the disclosing party or person with substantially greater facility than it could otherwise be obtained by the party seeking disclosure. It shall not be ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated tolead to the discovery of admissible evidence." (Emphasis added.)
It is axiomatic that whether evidence is admissible is a function of the manner in which that evidence is presented and the rules of evidence. However, in general, unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of an issue. Burns v.Gould, 172 Conn. 210, 214, 374 A.2d 193 (1977). The scope of discovery, therefore, must be ascertained with reference to the issues in the case, recognizing, however, that "[i]nformation material to the subject matter of a lawsuit certainly includes a broader spectrum of data than that which is material to the precise issues raised in the pleadings." Lougee v. Grinnell,
supra, 216 Conn. 489. (1990).
In his complaint, the plaintiff alleges that the Diocese and Bishop Curtis are liable to him for Pcolka's acts under the doctrine of respondeat superior and also because they were negligent in that they knew or should have known of Pcolka's aberrant conduct or nature yet permitted him to have access to young people.
"`The underlying rationale of the modern doctrine of respondeat superior . . . is that "every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority." Wolf v. Sulik, 93 Conn. 431,436, 106 A. 443 [1919]; Durso v. A.D. Cozzolino, Inc., 128 Conn. 24,27, 20 A.2d 392 [1941]. But it must be the affairs of theCT Page 12427principal, and not solely the affairs of the agent, which arebeing furthered in order for the doctrine to apply.'(Emphasis added.) Mitchell v. Resto, 157 Conn. 258, 262, 253 A.2d 25
(1968); see also Cardona v. Valentin, 160 Conn. 18, 22,273 A.2d 697 (1970) (employer liable for wilful torts of his employee when they are committed in furtherance of the employer's business)."Gutierrez v. Thorne, 13 Conn. App. 493, 537 A.2d 527 (1988). The plaintiff has not explained, nor has the court divined, how pouring through the personnel files of numerous clergymen other than Pcolka could reasonably lead to the discovery of evidence material to the issue of respondeat superior.
With respect to the plaintiff's claim that the Diocese and Bishop Curtis were negligent in their supervision of Pcolka, the plaintiff argues that if they were allowed to uncover numerous other incidents of sexual abuse of children by other priests this would be evidence that the Diocese should have promulgated policies proscribing priests from bringing children to their private rooms. Firstly, that is not what he plaintiff has alleged. Secondly, assuming ad arguendo that Pcolka performed the heinous acts alleged against him, and that those acts were outside the scope of his employment; Gutierrez v. Thorne, supra,13 Conn. App. 493-499; the Diocese and Bishop Curtis would be liable only if they knew or had reason to know that Pcolka had the propensity for such conduct. Restatement (Second) Torts § 317(b)(ii)[5], and Comment c of the Reporter's Notes thereto; Simmons v. BaltimoreOrioles, Inc., 712 F. Sup. 79, 81 (W.D.Va. 1989); Peck v. Siau,65 Wash. App. 285, 293-94, 827 P.2d 1108, 1113 (1992), Broderick v.King's Way Assembly of God Church, 808 P.2d 1211, 1221 (Alaska 1991); Bender v. First Church of the Nazarene, 59 Ohio App.3d 68,571 N.E.2d 475 (1989); Destefano v. Grabian, 763 P.2d 275, 287-288
(Colo. 1988).
The plaintiff relies on Hutchinson v. Luddy, 606 A.2d 905
(Pa.Super. 1992), involving claims against a priest, a bishop and a diocese similar to those here. In that case, the trial court granted a widesweeping request for production, such as that sought here, and the appeals court affirmed. In Hutchinson, however, the issue was not whether such a request was within the scope of permissible discovery. Rather, the issue, as framed by the court on appeal was "whether a church can avoid the discovery of relevant information in a civil action against the church by putting it in a place which is designated by canon law as a `secret archive.'" Id., 906. "It is the general rule that a case resolves only those issues explicitly decided in the case." StateCT Page 12428v. Ouellette, 190 Conn. 84, 91, 459 A.2d 1005 (1983).
It is, of course, possible that admissible evidence might be discovered were the court to allow the plaintiff to scour the personnel files of the many priests who have served the Diocese since its inception. That, however, is not the test to which this court is duty-bound to adhere. Broadly construing both the allegations of the complaint and the scope of discovery, the court finds that this request for documents is not reasonably calculated to lead to the discovery of admissible evidence. Practice Book § 218. Moreover, the evidence adduced by the Diocese established that attempting to comply with such a request would impose undue burden and expense on the Diocese. Practice Book § 221. As to this aspect of the subpoenas, the defendants' motion for a protective order is granted.
 III.
The defendants seek a protective order prohibiting the disclosure to others of information and documents obtained through the depositions of the defendants and Bishop Eagan.
"At the outset, it is important to recognize the extent of the impairment of First Amendment rights that a protective order, such as the one at issue here, may cause. As in all civil litigation, [the plaintiffs will obtain] the information they wish to disseminate only by virtue of the court's discovery processes."Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32, 104 S.Ct. 2199,81 L.Ed.2d 17 (1984). In Connecticut, the rules authorizing such discovery are adopted by the legislature; see General Statutes52-148 to 52-159; and by the judiciary. Practice Book § 216 et seq.; see State v. Clemente, 166 Conn. 501, 512-516, 353 A.2d 723
(1974). "A litigant has no First Amendment right of access to information made available only for purposes of trying his suit . . . Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations."Seattle Times Co. v. Rhinehart, supra.
"Moreover, pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law. . . . Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, CT Page 12429 information are not a restriction on a traditionally public source of information." (Footnote omitted.) Seattle Times Co. v.Rhinehart, supra, 467 U.S. 33.
"Finally, it is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny. . . . In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context." SeattleTimes Co. v. Rhinehart, supra, 467 U.S. 33-34.
"Because of the liberality of pretrial discovery permitted by . . . [Practice Book § 216 et seq.], it is necessary for the trial court to have authority to issue protective orders conferred by. . . [Practice Book § 221]. It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. . . . There is an opportunity, therefore, for litigants to obtain — incidentally or purposefully — information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes. . . . The prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders." (Footnotes omitted.) Seattle Times Co. v. Rhinehart, supra,467 U.S. 34-36. "[T]herefore . . . where . . . a protective order is entered on a showing of good cause as required by . . . [Practice Book § 221], is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." Id., 37.
The defendants have advanced two principal grounds which, they claim, rise to the level of good cause for the issuance of a protective order. The first ground is that such an order is necessary to protect the reputation of the defendants, especially the Diocese, and persons affiliated with them. The Diocese claims that its ability to obtain young people as volunteers in its religious ceremonies and its ability to perform good works has CT Page 12430 already been hampered by the publicity surrounding this case and that such damage will continue unless the requested protective order issues. Having heard the evidence, the court is not persuaded that disclosure of the products of pretrial discovery will visit such serious permanent damage on the defendants which, alone, would warrant, a protective order. In so holding, however, this court recognizes that at least one other court has held otherwise in an analogous situation; Shenandoah Publishing House,Inc. v. Fanning, 368 S.E.2d 253, 257-58 (Va. 1988); and that the Second Circuit Court of Appeals has observed that "[p]rotective orders are useful to prevent discovery from being used as a club by threatening disclosure of matters which will never be used at trial. Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public." Joy v. North, 692 F.2d 880, 893
(2d Cir. 1982).
The second principal ground asserted by the defendants for a protective order is that such an order is necessary to protect the right and opportunity of each of the defendants to obtain a fair trial by jury. The evidence was that this case, and the plaintiff's allegations, have received significant and responsible media coverage. Yet, the media coverage which those allegations have received may pale in comparison to the exposure which the products of pretrial discovery would yield. Not inappropriately, much of that information would be republished or rebroadcast by the media prior to trial. Such exposure may well have a salutary effect, as the plaintiff claims, but that is not the purpose of pretrial discovery. Joy v. North, supra, 692 F.2d 893. Such pretrial media exposure of a case such as this indeed could impair the rights of the parties to receive a fair trial. State v.Crafts, 226 Conn. 237, 257-59, 627 A.2d 877 (1993); State v.Townsend, 211 Conn. 215, 225-26, 558 A.2d 669 (1989). It is, after all, the business of the Superior Court to provide private litigants an opportunity to adjust their grievances on their merits in a fair trial culminating in a final judgment. Killinglyv. Connecticut Siting Council, 220 Conn. 516, 532, 600 A.2d 752
(1991); Corey v. Avco-Lycoming Division, 163 Conn. 309, 316-17,307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S.Ct. 903,34 L.Ed.2d 699 (1972). A fair and impartial jury obtained from a fair cross section of the community, is an indispensable component of a fair jury trial. State v. Castonguay, 194 Conn. 416, 420,481 A.2d 56 (1985); State v. Townsend, 167 Conn. 539, 551,356 A.2d 12, cert. denied, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 62 (1975); see Conn. Constit., art. I, § 19; see also J.E.B. v. Alabama exCT Page 12431rel. T.B., ___ U.S. ___, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994);Georgia v. McCollum, 505 U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33
(1992); Edmondson v. Leesville Concrete Co., 500 U.S. 614,111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); Powers v. Ohio, 499 U.S. 400,111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); Martins v. ConnecticutLight Power Co. 35 Conn. App. 212, 222-226, 645 A.2d 557, cert. denied, 231 Conn. 915, 648 A.2d 154 (1994). We should aspire to achieve as impartial a jury from as broad a cross-section of the community for the fairest trial possible. Where, as here, prophylactic measures may be timely employed, settling for the minimum in fairness ought not to be the goal of any court.
"Even if the pending litigation is a matter of public interest rather than an ordinary dispute between private litigants," Practice Book § 221 provides that a protective order may be issued "for good cause shown"; a higher standard, such as compelling cause, need not be satisfied. Bowlen v. District Court,733 P.2d 1179, 1183 (Colo. 1987). "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." (Authorities omitted.) Anderson v.Cryovac, Inc., 805 F.2d 1, 7-8 (1st Cir. 1986).
Specific evidence of widespread media coverage was presented to the court. This court also takes judicial notice of media coverage of this case after the close of the evidence and at the end of the hearing, albeit not for the truth of the matters asserted therein. Anderson v. Cryovac, Inc., supra, 805 F.2d 8;State v. Boucher, 207 Conn. 612, 615-616, 541 A.2d 865 (1988). The parties' right to a fair and impartial jury comprised of a fair cross section of the community, already problematical because of the classic collision between that right and the right, and necessity, for a free and open press, will become further imperiled unless that right is protected by an appropriate order of the court. For this good cause, and because edification of the public is not a proper purpose of pretrial discovery; Joy v.North, supra, 692 F.2d 893; the motion of defendants Diocese and Bishop Curtis for a protective order is granted, pursuant to Practice Book § 221 and Seattle Times Co. v. Rhinehart, supra, until further order of the court and with the caveat that it shall "not restrict the dissemination of the information if gained from other sources. . . ." Seattle Times Co. v. Rhinehart, supra, 37. The text of that protective order is an addendum hereto.
In summary, the parties shall be permitted access to certain of the contents of the defendant Pcolka's personnel file, which CT Page 12432 has been examined by the court in camera, and the defendants' motions for a protective order with respect to personnel files other than that of Pcolka and with respect to the disclosure of information and documents obtained by way of pretrial discovery from any of the defendants or from Bishop Eagan are granted.
BY THE COURT
Bruce L. Levin Judge of the Superior Court