**Alvin K. PHILLIPS, as Personal Representative of the Estates of Timothy Byrd, Darrell L. Byrd, and Angela Byrd, deceased, and as Guardian of Samuel Byrd, minor child, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

No. CV98–168MDWM, CV98–169MDWM, CV98–170MDWM, CV98–171MDWM.

United States District Court,
D. Montana,
Missoula Division.

Jan. 5, 2001.

laws were available to Plaintiffs to prevent the claimed wrongs.

James H. Goetz, Robert K. Baldwin, Goetz Gallik Baldwin & Dolan, Bozeman, MT, James E. Butler, Jr., Peter J. Daughtery, Butler Wooten Overby Fryhofer, Daughtery & Sullivan, Columbus, GA, Christopher P. Christian, Hutton & Hutton, Wichita, KS, for Alvin K. Phillips, Timothy Byrd, deceased, Angela Byrd, deceased, Darrell L. Byrd, deceased, Samuel Byrd, plaintiffs.

Robert B. Ellis, Walter R. Lancaster, John T. Hickey, Jr., Kirkland & Ellis, Chicago, IL, William Evan Jones, Garlington, Lohn & Robinson, PLLP, Missoula, MT, for General Motors Corporation, defendants.

## ORDER

MOLLOY, District Judge.

### I. Introduction

The interesting question presented in this case is whether a defendant is entitled to keep secrets after a product liability case against it is settled. The narrow issue raised goes to the judicial role in sanctioning secrecy when the information a party seeks to keep quiet does not fall within the four corners of Rule 26(c) or a stipulated protective order. The essential purposes of tort law, that is, compensation of the victim, behavior alteration, deterrence of civil wrong doing, and moral accountability, lead to a conclusion that judicial secrecy has no place in litigation or settlement except in those narrow instances recognized by the Federal Rules of Civil Procedure or private treaties that implicate legally recognizable secrecy such as privilege or trade secrets. For the reasons set forth below I am granting the request for disclosure.

The Los Angeles *Times* moves to intervene in this case for the express purpose of obtaining access to documents that are sealed in the court file, specifically Exhibit 8 of Plaintiff's Second Motion for Sanctions (docket # 261). The parties have reached a settlement of the underlying case, and

this Motion to Intervene proceeds independent of the settlement by the parties.

The Court held a hearing on the motion to intervene as well as the motion to disgorge on December 20, 2000. Lucy France argued for General Motors, James Goetz argued for Plaintiffs, and Peter Michael Meloy argued for the *Times*. Neither Plaintiffs nor General Motors opposed the *Times'* motion to intervene. Consequently, I granted the Motion to Intervene at the hearing. General Motors vigorously opposes unsealing Exhibit 8, while Plaintiffs do not object to unsealing Exhibit 8 or other parts of the file not specifically covered by the nondisclosure agreement.

The underlying case involving a product defect claim arises from a C/K pickup collision and the resulting fiery deaths of members of the Byrd family. Unquestionably, General Motors denied the existence of any design defect in the C/K pickup. There was also a hotly contested issue about the cause of death or injury in the case.

## II. Background

During the course of discovery, Plaintiffs filed a motion to compel General Motors to produce aggregate settlement information. Magistrate Judge Erickson then ordered General Motors to produce "the total number of settlements and the total dollar amount involved with those settlements in all cases involving C/K pickup post-collision fuel-fed fires." Order of August 14, 2000 (docket # 253). He further ordered that such production "shall be subject to the Protective Order in place subject to further review and determination by Judge Molloy as to whether information produced should be subject to his Order." *Id.*

The parties had earlier stipulated to a Protective Order which I signed on May 23, 2000 (docket # 110). By its nature, the stipulated Protective Order envisions the sharing of information. The Order just seeks to control who has the right to see the information. The Protective Order allows Plaintiffs' counsel to disseminate confidential documents produced by General Motors to other plaintiff's lawyers and to experts involved in fuel system integrity litigation against General Motors. Any lawyer or expert who gains access to the information by informal sharing is required to certify in writing that she will not release the confidential information to the competitors of General Motors.

"Confidential Information" as contemplated by the Protective Order means "documents within the following descriptive categories: Executive Committee Documents, production, sales and profit forecasts, procedures for evaluating defects or non-compliance with federal safety standards and meeting minutes of the truck and bus fuel system coordinating groups." This is the kind of information Rule 26(c) recognizes as being legally protectable. Furthermore, the Protective Order requires that any pleading, motion, or other paper filed with the Court that discloses any Confidential Information has to be filed under seal pending further review by this Court to determine if it should be subject to the Protective Order. I assume this provision was not meant to be a rubber stamp requirement. The Protective Order does not "prevent any party from using Confidential Information in connection with any trial, hearing, or other public proceeding in this matter." *See* Order of May 23, 2000.

On October 13, 2000 Myron Levin, a staff writer for the *Times*, sent a letter to me asking for access to exhibits attached to Plaintiffs' Second Motion for Sanctions. I then informed the parties of Levin's request. In my letter of advice, and in my view, no "trade secrets, proprietary matters, research, development or other commercial information that should be protected under Rule 26(c), F.R.Civ.P." were filed in Exhibit 8 or elsewhere. I also told both parties that I was inclined to inform the Clerk of Court that the case file, in its entirety, is public information and open to public scrutiny. I asked both parties to brief any objection to making the file public, and to identify specifically any materi-

als either party believed to be protected under the Federal Rules of Civil Procedure.

General Motors indicated its opposition to release of the file, specifically release of Exhibit 8. Plaintiffs favored release of the information. The *Times* then filed its Motion to Intervene on November 16, 2000 (docket # 289) so that it could participate formally in the proceedings.

## III. Analysis

■ A court has supervisory power over its own records and files, and may provide access to court documents at its discretion. *Hagestad v. Tragesser,* 49 F.3d 1430, 1433–34 (9th Cir.1995)(*citing Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)). There is a strong presumption in favor of access. *Id.* at 1434. This common law presumption of access can be overcome by "sufficiently important countervailing interests." *San Jose Mercury News, Inc. v. U.S. District Court,* 187 F.3d 1096, 1102 (1999). If information is to be kept from public access, the court must articulate the factual basis for its secrecy determination. A finding that public scrutiny is to be avoided may not rely on conjecture or hypothesis. *Hagestad,* 49 F.3d at 1434.

■ The propriety of disclosure has been addressed by the Supreme Court. A district court has the power to place a document produced during discovery under a protective order for good cause without offending the First Amendment. *Seattle Times v. Rhinehart,* 467 U.S. 20, 37, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). In the absence of a protective order issued by the court, however, fruits of pre-trial discovery are presumptively public. *Mercury News,* 187 F.3d at 1103. "Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown." *Id.* Documents under a blanket protective order are subject to challenge to determine whether good cause exists to include any particular document under the protective order. *Id.*

In *Mercury News,* the Ninth Circuit refrained from deciding whether the First Amendment bestows a prejudgment right of access to civil court records. Instead, it relied on federal common law and the Federal Rules of Civil Procedure to find that the public has a presumptive access to prejudgment civil court records. *Id.* at 1101–03. The ruling makes sense, particularly on a product liability claim, because the probability of altering behavior or deterring civil wrong doing is lessened significantly by secrecy.

■ Here General Motors argues that Exhibit 8 falls within the language of the Protective Order. This proposition is based on the claim that Magistrate Erickson had good cause to include it under the Protective Order when he issued his Order of August 14, 2000. If this is so, then General Motors argues that I should defer to Magistrate Erickson's ruling. This argument is precarious in view of Judge Erickson's transient finding that his determination was subject to my review.

General Motors takes the position that Magistrate Erickson made a specific finding of good cause to include the information from Exhibit 8 under the Protective Order. I do not believe his ephemeral determination can be so broadly construed in the absence of supporting facts. The argument is even more problematic when considered in light of General Motors' current position that I should alter the terms of the May 23, 2000 Protective Order to prevent dissemination of information protected by the Order to other plaintiffs in similar cases against General Motors. No legal or equitable argument has been articulated that would justify such activist intervention. Furthermore, such a decision would "change the rules" in the middle of the game, a proposition General Motors suggests would be unfair elsewhere.

General Motors produced Exhibit 8 not in the orderly course of discovery, but only in response to Magistrate Erickson's Order of August 14, 2000. Magistrate Erickson made no specific good cause finding to

place Exhibit 8 under the Protective Order. A plain reading of his order shows that he placed Exhibit 8 under the existing Protective Order specifically pending my review to determine whether the information should be subject to the Protective Order.

The good cause for secrecy issue was deferred to me by Judge Erickson and I find none has been shown here by law or by fact. I find that Exhibit 8 contains no information subject to the Protective Order stipulated to by the parties. "Confidential Information" for purposes of the Protective Order means "documents within the following descriptive categories: Executive Committee Documents, production, sales and profit forecasts, procedures for evaluating defects or non-compliance with federal safety standards and meeting minutes of the truck and bus fuel' system coordinating groups." The subject of Exhibit 8, aggregate settlement amounts and averages, does not fall within the definition of confidential information contemplated by the Protective Order. Because I find the judicial branch, like the executive and legislative branches, functions better in the light of fact as opposed to the darkness of secrecy, I decline to extend the boundaries and terms of the Protective Order as requested by General Motors.

Since I have determined that Exhibit 8 is not subject to the Protective Order or to the provisions of Fed.R.Civ.P. 26(c), General Motors must present sufficiently important countervailing evidence to persuade me to curtail public access to it. *See Mercury News*, 187 F.3d at 1102.

Here, the argument is that settlement amounts, whether summarized as in Exhibit 8, or otherwise, should be protected from the press or public access because revealing settlement amounts would have a potential discouraging effect on settlements in the future. General Motors also argues that revealing the collective sum payment would increase the likelihood that individual settlement amounts would be revealed, would be misleading to the public about safety of C/K trucks, and that it

would be unfair to "change the rules in the middle of the game" when General Motors thought it was producing information that was subject to the Protective Order in place.

I am not persuaded that release of the aggregate settlement information would have a chilling effect on future settlements. It might have an encouraging effect on settlement: plaintiffs might discover that amounts offered in settlement are justified by the average amounts paid for like cases.

General Motors is a multinational corporation that settles many cases in various jurisdictions and venues. If future litigation discovery reveals future aggregate settlement information amounts, General Motors argues that a simple arithmetic process would allow future parties to ascertain the amounts of individual settlements. However, in the instant case for example, there were four cases that settled together. In the *Gallagher* cases recently filed in this Court there are also four cases that will also presumably settle or try as a unit. *See Bradstreet v. General Motors Corp.*, CV 00–195–M–DWM; *Bradstreet v. General Motors Corp.*, CV 00–196–M–DWM; *Bradstreet v. General Motors Corp.*, CV 00–197–M–DWM; *Bradstreet v. General Motors Corp.*, CV 00–198–M–DWM. Simple arithmetic may provide ballpark guesses for individual settlement amounts, but exact settlement amounts for each case will remain a source of speculation.

It seems that the real reason General Motors wants to keep this information secret is tactical. General Motors argues that it would be embarrassed if the press or the public finds out the amount of its aggregate settlements on C/K trucks. The inference it draws from this proposition is that the potential embarrassment and the arguably consequent loss of good will is harm enough to trigger protections from the Court under Rule 26(c). It is really a new variation of the old saw that "what is good for General Motors is good for the country."

However, as was noted at oral argument, the issue is not new. When General Motors was accused of manufacturing vehicles susceptible to post-collision fuel-fed fires in a television newsmagazine program, it countered the alleged misinformation with a public-relations campaign that was able to effectively discredit the report. Any harm that General Motors avows would ensue here is speculative at best. In the public market place of ideas, there is sufficient opportunity to discuss or explain away potential embarrassment.

General Motors mistakenly argues that the rules are changing in the middle of the game by removing documents from a Protective Order. This argument is based on the mistaken notion that General Motors' subjective intent in complying with court orders and the Rules of Discovery somehow trumps the application of legal principles. General Motors argues that when it produced the documents it felt that production was subject to the Protective Order. As discussed above, however, Magistrate Erickson deferred the good cause finding on the information comprising Exhibit 8. Permissive intervention is the appropriate way to test whether good cause requirements have been shown for individual documents. *See Mercury News,* 187 F.3d at 1103. General Motors cannot claim surprise at established precedent in this Circuit.

 I find that General Motors has not presented sufficient countervailing arguments to rebut the presumption of public access to court documents. General Motors has indicated its intent to appeal this decision to the Ninth Circuit. I will grant a temporary stay pending a request to the Circuit to stay the appeal. I do not believe my analysis is wrong in this case. However, the improvident public disclosure of Exhibit 8 would compromise an effective appeal. Consequently, I grant General Motors a limited stay so it can seek a stay from the Ninth Circuit on appeal.

Wherefore IT IS ORDERED that the Los Angeles *Times'* Motion to Intervene (docket # 289) is GRANTED.

IT IS FURTHER ORDERED that the court file in this case, including Exhibit 8 to Plaintiffs' Second Motion for Sanctions, shall be accessible to the public.

IT IS FURTHER ORDERED that this Order is temporarily STAYED pending a request to the Ninth Circuit Court of Appeals for a stay on appeal of this Order to the Ninth Circuit Court of Appeals. If no appeal is entered within thirty days of issuance of this Order, the temporary stay shall lift.